IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JUAN JASO, JR., *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL NO. 2:15-CV-269 |
| § | |
| BULLDOG CONNECTION § | |
| SPECIALISTS LLC, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

The Court has before it Plaintiffs' motion for conditional certification in this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Dkt. No. 10. After considering the motion, the complaint, the accompanying evidence, the parties' arguments, and the applicable law, the Court conditionally certifies the proposed class and sustains certain of Defendant's objections as set forth below.

### I. Background

From approximately January 2014 through June 2015, Plaintiff Juan Jaso, Jr., ("Jaso") worked for Bulldog Connection Specialists, LLC ("Bulldog"), an oilfield services company, as a Thread Representative. Pl.'s Orig. Collective Action Compl. ¶¶ 5.1– 5.2, Dkt. No. 1; Def.'s Orig. Ans. ¶¶ 26–27, Dkt. No. 7. Bulldog "provides its clients with connection solutions and employs Thread Representatives . . . to ensure certain pipe and casing connects properly while working at a well site/drilling location." Compl. ¶ 5.1; Ans. ¶ 26 (admitting allegation). The complaint describes Thread Representatives as "blue collar" workers who do not have management responsibilities. Compl. ¶ 5.6–5.12. Bulldog disputes that characterization and denies those allegations. Ans. ¶¶ 31–37.

According to the complaint, Bulldog paid, and pays, Jaso and Thread Representatives a salary plus a nondiscretionary bonus for hours worked at a job site.[1]  Compl. ¶ 5.3; *see also* Pay Stub (pay date July 1, 2014), Dkt. No. 1 Ex. B (showing "Hourly Bonus" with "Qty" of 200 and "Rate" of 10 yielding "Current" amount of 2,000).  Plaintiffs aver that Bulldog used a "predetermined formula" with "specific criteria" to decide whether an employee receives a job bonus.  Compl. ¶¶ 5.14–5.15.  As such, Plaintiffs claim that the job bonuses should have been included in the computation of their hourly pay rate before applying applicable overtime multipliers, but they were instead not paid for more than forty hours per week, even though they worked longer hours.  *Id.* ¶¶ 5.19–5.20 (citing 29 C.F.R. § 778.209); *see also* Compl. ¶ 5.10 (alleging that Plaintiffs "worked (and continue to work) long hours. Specifically, Plaintiff and the Potential Class Members regularly worked (and continue to work) more than 12 hours in a day, and more than 80 hours in a week.").

Jaso filed his complaint on June 16, 2015.  On July 7, 2015, two additional alleged Thread Representatives who work for Bulldog opted in as plaintiffs.  Dkt. No. 4.  Bulldog has answered the complaint, Dkt. No. 7, and an additional individual, Larry Richardson, filed an opt-in notice on September 8, 2015, Dkt. No. 14, after the pending motion to certify was filed, Dkt. No. 10 (filed Aug. 8, 2015).

## II. Conditional Certification

Plaintiffs define the proposed class as follows:

> All Thread Representatives who worked for Bulldog Connection Specialists, LLC at any time from June 16, 2012 to the present.

Pl.'s Opp'd Mot. Certification & Request Notice Potential Class Members 2, Dkt. No. 10 [hereinafter "Mot. Certify"].  Plaintiffs submit, inter alia, a proposed notice to opt-in class members, Dkt. No. 10 Ex. B, and Jaso's declaration, Dkt. No. 10 Ex. A.

---

[1] Bulldog "admits that Plaintiff and Potential Class Members were paid a salary and a per hour amount for field assignments . . . ." Ans. ¶ 28.

Plaintiffs request a sixty-day notice period and ask the Court to order Bulldog to produce the names, addresses, e-mail addresses, and telephone numbers of potential members of the putative class ("potential members") in an electronic format. Mot. Certify 17. Plaintiffs propose to send each potential member the notice by postal and electronic mail, call each member to confirm receipt, and send a second, identical notice by mail and e-mail after thirty days to remind potential members of the deadline. Mot. Certify 17–18. Finally, Plaintiffs ask the Court to prohibit Bulldog from communicating with members of the potential opt-in class during the notice period. Mot. Certify 19. Bulldog, in addition to opposing Plaintiffs' motion for conditional certification on its merits, objects to the form of the proposed notice, producing the names of potential opt-in class members in electronic format, Plaintiffs' proposed plan for giving notice, and entry of an order forbidding it to communicate with potential opt-in class members.

    A. <u>Governing Law</u>

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). By its terms, the FLSA allows "one or more employees for and in behalf of himself or themselves and other employees similarly situated" to bring a private civil suit to recover damages for violations of these provisions of the FLSA. 29 U.S.C. § 216(b) (2012); *accord. Genesis Healthcare*, 133 S. Ct. at 1527. Courts routinely refer to FLSA actions brought by an employee for and on behalf of other employees under this provision as "collective actions." *Genesis Healthcare*, 133 S. Ct. at 1527 (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989)). As the Supreme Court has explained, "[a] collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-La Roche,* 493 U.S. at 170; *see also id.* at 167–68 (construing § 216(b) incorporated into the Age Discrimination in Employment Act of

1967, 81 Stat. 602, as amended); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (1995) (citation omitted) (noting that "[t]he ADEA, at 29 U.S.C. § 626(b), explicitly incorporates section 16(b) of the Fair Labor Standards Act").

District courts generally take one of two approaches to certification of an FLSA collective action. *Mooney,* 54 F.3d at 1213 (observing that "[t]he district court cases seem to divide along two basic lines"); *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010) ("Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action."). On the one hand, some courts follow a line of authority associated with *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990) which "espouses the view that § 16(b) of the [FLSA] merely breathes new life into the so-called 'spurious' class action procedure previously eliminated from Fed. R. Civ. P. 23." *Mooney*, 54 F.3d at 1214. The *Shushan* approach treats certification of a collective action under the FLSA and certification of a class under Rule 23 identically, requiring the plaintiff to establish numerosity, commonality, typicality, and adequate representativeness. *Id.*; *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 823 (N.D. Tex. 2007). On the other hand, following the approach utilized in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987), "[m]ost courts, including district courts in this circuit, use the 'two-step ad hoc approach' as the preferred method for the similarly situated analysis rather than the Rule 23 requirements." *McKnight*, 756 F. Supp. 2d at 800 (collecting cases).

This Court has taken the *Lusardi* approach in a prior case. *Perez v. Valdez*, No. 1:13-CV-149, Slip Op. at 5 (S.D. Tex. Sept. 26, 2014) (Tagle, J.). The parties to this action note that district courts in the Fifth Circuit typically use the *Lusardi* approach. The parties do not argue that this Court should follow a different approach in this case. Def.'s Resp. Mot. Certify 3–4, Dkt. No. 11 (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519–20 (5th Cir. 2010).

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of

the factors considered in the [two-stage] analysis." *McKnight*, 756 F. Supp. 2d at 801 (quoting *Mooney*, 54 F.3d at 1213) (alteration in original). At the first *Lusardi* stage (the notice stage), "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Mooney*, 54 F.3d at 1213–14. The district court makes its stage one decision by "determin[ing] whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo*, 600 F.3d at 519 (citing *Mooney*, 54 F.3d at 1213–14). At this stage, the district court typically "has minimal evidence" before it, *Mooney* 54 F. 3d at 1214, and a stage-one decision is therefore frequently based "only on the pleadings and affidavits that have been submitted." *McKnight*, 756 F. Supp. 2d at 801. Consequently, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Mooney*, 54 F.3d at 1214 (footnote omitted); *McKnight*, 756 F. Supp. 2d at 801 (citation omitted). Later, in the second *Lusardi* stage, "after discovery is largely complete and more information on the case is available, the court makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action." *Acevedo*, 600 F.3d at 519 (citing *Mooney*, 54 F.3d at 1214). However, at no point in the certification process may the court "address the merits of the claims . . . by ruling on factual disputes or making credibility determinations." *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 691 (S.D. Tex. 2013) (citing *Mooney*, 54 F.3d at 1214); *accord. McKnight*, 756 F. Supp. 2d at 802 (citations omitted).

  B. <u>Analysis</u>

Jaso states in his declaration that, "[w]hile [he] was employed with Bulldog, [he] typically worked 12-hour shifts, 7 days a week but never received overtime compensation for hours worked in excess of 40 per week." Jaso Decl. ¶ 7. He also declares that:

> 8. The pay practices described above are consistent for all Thread Representatives employed by Bulldog during the time period that I worked at Bulldog regardless of location.
> 9. To the best of my personal knowledge all of the pay practices I have described above, are still in effect at Bulldog at the present time.
> 10. To the best of my personal knowledge, there are approximately 30 to 50 Thread Representatives who have been engaged in the same unpaid work in the last two or three years as I have described above.
> 11. Based on my personal knowledge, these Thread Representatives would be interested in joining this lawsuit and seeking compensation for their unpaid hours of work if they were made aware of this lawsuit and had the opportunity to join it and if they were not afraid of retaliation from Bulldog.

*Id.* ¶¶ 8–11. Labelling Jaso's declaration as conclusory, Bulldog argues that Plaintiffs have not produced sufficient evidence that other aggrieved Thread Representatives exist or that a single decision, policy, or plan of misclassification makes this case suitable for collective adjudication. Def.'s Resp. Mot. Certify 8. After examining the evidence, allegations, and applicable law, the Court concludes that Plaintiffs have carried their relatively light burden at the first *Lusardi* stage.

### 1. Other Aggrieved Employees

Without more, general allegations, that an employer violated the FLSA do not ordinarily suffice to establish that other similarly situated employees exist. *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983) ("The [district] judge had before him only counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores." (footnote omitted)); *Xavier v. Belfour USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) ("Although the 'similarly situated' standard is lenient at the notice stage, general allegations that the employer violated the FLSA are insufficient"). Here, in addition to Jaso's statements that between 30 and 50 Thread Representatives would be interested in pursuing this case, Jaso Decl. ¶¶ 10, 11, three Thread Representatives opted into this action after Jaso filed his complaint. Dkt. Nos. 4, 14. It is reasonable for the Court to infer that other aggrieved employees exist since this putative action attracted additional plaintiffs before notice was sent. *Lee v.*

*Metrocare Servs.*, 980 F. Supp. 2d 754, 768 (N.D. Tex. 2013); *Walker v. Honghua America, LLC*, 870 F.Supp.2d 462, 472 (S.D. Tex. 2012) (citing *McKnight*, 756 F. Supp. 2d at 805); *Shaffner v. Cash Register Sales 7 Serv. of Houston, Inc.*, No. H-05-2064, 2006 WL 1007542, at *1 (S.D. Tex. Apr. 17, 2006) ("The addition of two of the three Plaintiffs after the inception of this [FLSA] case is persuasive evidence that a putative class does exist."). Bulldog cites a case in which a motion for conditional certification was denied based on a fact-specific analysis of the claims and defenses of the three plaintiffs who joined the complaint, *see Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 289 (S.D. Tex. 2012), but no plaintiff opted in to that case after it was filed. *See id.* No party to this case has submitted evidence detailing the claims or potential defenses that might apply to the Plaintiffs who have opted in to the instant action, and the fact that they have opted in, without more on this record, therefore tips the balance in favor of conditional certification at the relatively lenient first *Lusardi* stage.

### 2. Similarly Situated

For purposes of conditional certification under the FLSA, "[s]imilarly situated does not necessarily mean identically situated." *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D. La. 2005) (footnote omitted). Rather, the plaintiff must show only that he and the employees in the proposed class are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan*, 497 F. Supp. 2d at 825 (citing *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)); *see also, e.g., Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012) (quoting and applying this standard from *Ryan*); *Walker*, 870 F. Supp. 2d at 468 (same). Conversely, "if the job duties among potential members of the class vary significantly, then class certification should not be granted." *Walker*, 860 F. Supp. 2d at 468 (quoting *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H–08–1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008) (other citations omitted); *see also Aguirre v. SBC Commc'ns, Inc.*, No. H–05–2198, 2007 WL 772756, at *12 (S.D. Tex. Mar. 12,

2007) (holding that plaintiffs are not similarly situated when their job duties vary "substantially"). Nonetheless, "the 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)[, so] a unified policy, plan, or scheme of discrimination may not be required to satisfy . . . § 216(b)." *Heeg*, 907 F. Supp. 2d at 862 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996) (alterations in original, other citation omitted).

In its response to Plaintiffs' motion to certify, Bulldog argues, without citing supporting evidence, that Jaso supervised more than two employees and was exempt from the FLSA's overtime requirements under the applicable regulations. Def.'s Resp. Mot. Certify 7—8. Further, Bulldog asserts that, because Jaso lacks personal knowledge of how Bulldog decided to classify each Thread Representative as exempt, he has not sufficiently dispelled the possibility that the Court will be drawn into a series of minitrials on the facts of each classification decision. *See id.* at 8–9 (citing 29 C.F.R. § 541.601, which applies to highly compensated employees, to argue that "[s]ome Thread Representatives may be subject to some FLSA exemptions").

The employer, not the employee, has the burden to prove that an FLSA exemption applies. *Bass v. City of Jackson*, 878 F. Supp. 2d 701, 706 (S.D. Miss. 2011) (citing *Monroe Firefighters Ass'n v. City of Monroe*, 600 F. Supp. 2d 790, 803—804 (W.D. La. 2009)). In several cases, judges of this Court have refused to shift the burden to the employee on a motion for conditional certification, "determin[ing instead] that exemptions are merit-based and not relevant at the notice stage."[2] *In re Wells Fargo Wage & Hour Emp. Prac. Litig. (No. III)*, No. H-

---

[2] Germane to the second *Lusardi* stage, "[c]ourts have allowed the use of representative testimony in cases involving allegations of unpaid overtime." *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 532 (S.D. Tex. 2008) (collecting cases including *Brennan v. Gen. Motors Acceptance Corp.*, 482 F. 2d 825, 829 (5th Cir. 1973) (in which the district court permitted collective testimony in unpaid overtime case)); *see also Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 484 (E.D.N.Y. 2001) ("[S]tanding alone, the prospect of individual defenses should not defeat authorization of a collective action . . . ."); *Mahoney v. Farmers Ins. Exch.*, No. 4:09-CV-2327, 2011 WL 4458513, at *12 (holding that defense could be resolved in collective action with representative plaintiffs over objection that compensability of time

11-2266, 2012 WL 3308880, at *28 (S.D. Tex. Aug. 10, 2012) (Miller, J.) (distinguishing cases on this ground), *quoted in Heeg*, 907 F. Supp. 2d at 865 (collecting additional authority); *Heeg*, 907 F. Supp. 2d at 863 ("If there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate." (citing *Rueda v. Tecon Servs., Inc.*, No. H-10-4937, 2011 WL 2566072, at *4 (S.D. Tex. June 28, 2011)) (other citation omitted)). As such, Bulldog's contention that each Thread Representative may be subject to a fact-specific exemption analysis does not militate against conditional certification at this stage.

Turning to the evidence and allegations in the record, Jaso describes his own job duties in his declaration, Jaso Decl. ¶¶ 4–5, and later sets forth his estimate of the number of similarly situated nonexempt Thread Representatives based on his "personal knowledge," *id.* ¶ 11. Read with the light burden applicable at this preliminary stage in mind, it is reasonable to conclude that Jaso bases his estimate on personal observations of the job responsibilities, pay received, and hours worked by other Thread Representatives at Bulldog. *See id.* ¶¶ 4, 8–11. The fact that additional Thread Representatives have joined this action lends additional weight to that inference. Dkt. No. 4, 14. The additional plaintiffs have not submitted declarations, but an FLSA plaintiff "is not] required to identify and obtain preliminary support from . . . unspecified numbers of potential class members in order to provide notice to other potential class members." *Black v. Settlepou, P.C.*, No. 3:10-CV-1418-K, 2011 WL 609884, at *3 (N.D. Tex. Feb. 14, 2011) (relying on single affidavit and stating that contrary rule "would seem to be putting the cart before the horse"). Rather, "there must only be a 'reasonable basis' to believe that other aggrieved individuals exist." *Id.* (citing *Tolentino v. C & J Spec–Rent Serv.,*

---

claimed by individual plaintiffs had to be determined case-by-case); *Green v. Plantation of La.*, No. 2:10-0364, 2010 WL 5256354, at *11 (W.D. La. Nov. 24, 2010) (rejecting argument that determining whether workers were properly classified as independent contractors would be too individualized and fact intensive because lease agreements to be interpreted were substantially similar to one another); *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *5 (M.D. Tenn. Sept. 26, 2006) *aff'd*, 278 F. App'x 488 (6th Cir. 2008).

*Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010)). While Bulldog argues that different individual exemptions may apply to different Thread Representatives, it does not dispute Plaintiffs' allegations that it classifies all Thread Representatives as nonexempt and pays them accordingly. *See* Def.'s Resp. Mot. Certify 8–9. For these reasons, the Court finds there to be a reasonable basis at the first, lenient *Lusardi* stage to believe that there exists a class of Thread Representatives who are similarly situated as to job responsibilities and pay provisions. *See Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 917–18 (S.D. Tex. 2010) (footnote omitted) (conditionally certifying collective action in part based on employees' declaration that she "regularly worked more than forty hours in a week but that she did not get paid for those extra hours . . . [and] claims to have personally seen other employees in IT Services often working overtime . . . "); *Black*, 2011 WL 609884, at *3–*4 (relying on plaintiff paralegal's affidavit and employer's admission that it employed ten additional paralegals).

### III. Objections to Plan for Giving Notice

Bulldog raises several objections to Plaintiffs' proposed plan for sending notice to potential opt-in plaintiffs and the form of the proposed notice itself. When exercising their authority to manage the process of giving notice to potential opt-in plaintiffs, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims.").

A. <u>Manner of Sending Notice</u>

The parties disagree about how frequently notice should be given to members of the potential opt-in class. Plaintiffs seek an order compelling Bulldog to produce the putative class members' telephone numbers and e-mail addresses, so Plaintiffs can send those who have not opted in a reminder notice after thirty days and contact them by telephone to confirm receipt of the notices.

Regarding notice by e-mail, Bulldog raises concerns about employee privacy and the potential for confusion. Def.'s Resp. Mot. Certify 14. Disclosure of a putative class member's e-mail address and telephone number raises legitimate privacy concerns—concerns that can often be addressed by entry of an appropriate protective order. *See Blakes v. Illinois Bell Tel. Co.*, No. 11CV336, 2011 WL 2446598, at *7 (N.D. Ill. June 15, 2011) (citations omitted) (stating that "a protective order can allay any privacy concerns caused by furnishing contact information to named plaintiffs' attorneys"). Courts in this division and in the Fifth Circuit often approve notice by e-mail of FLSA collective actions. *See White v. Integrated Elec. Tech., Inc.*, Nos. 11-2186, 12-359, 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (collecting "ample authority indicating that federal district courts, including courts in the Eastern District of Louisiana and the Fifth Circuit, frequently utilize e-mail to provide notice of collective actions to potential class members"); *see also, e.g., Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 655–56 (S.D. Tex. 2010) (Jack, J.) (ordering production of e-mail addresses without comment where no objection to e-mail notice lodged); *Thomas v. HCC-High Capacity Coil, LLC*, No. 2:14-CV-17, 2014 WL 4063981, at *2 (S.D. Tex. July 19, 2014) (Libby, J.) (recommending granting permission to provide notice by electronic mail and telephone) (adopted by order entered Aug. 15, 2014, Dkt. No. 36 (Gonzales Ramos, J.)); *Martinez v. Refinery Terminal Fire Co.*, 2014 WL 2863659, at *4 (S.D. Tex. June 24, 2014). Bulldog cites a case decided in 2002 disallowing e-mail notice because e-mail can be forwarded and its text reposted with commentary more easily than a notice sent by regular mail. *See Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630–31 (D. Colo. 2002). Sending a paper notice does not afford the same amount of protection from further dissemination and commentary today, however, for a recipient with a smart phone can easily snap a picture of a paper notice and disseminate it electronically with commentary. *Cf. Riley v. California*, 134 S. Ct. 2473, 2479–80 (2014) (discussing breadth of capabilities of phones available today and the sea change in balance of privacy interests that has accompanied the growing use of smart phones in the past ten years). In view of Plaintiffs'

11 / 18

unchallenged allegation that Thread Representatives sometimes stayed at the job site twenty-four hours a day, Compl. ¶ 5.11, the Court finds that notice by e-mail will more likely reach potential class members than regular mail sent to the home address on file with Bulldog. *See Tolentino* 716 F. Supp. 2d at 655–56; *Thomas,* 2014 WL 4063981, at *2; *White*, 2013 WL 2903070, at *9 (crafting protective order limiting attorneys' use of contact information).

As for a reminder notice and telephone follow-up, many courts have ordered production of telephone numbers because they provide a more stable means of contacting a person who has moved than a mailing address. *Dyson v. Stuart Petroleum Testers, Inc.*, — F.R.D. —, 2015 WL 5062265, at *7 (W.D. Tex. Aug. 27, 2015) (allowing production of telephone numbers based on a plethora of cases in which "courts have allowed discovery of phone number of putative class members"). Here, Plaintiffs propose to use telephone numbers to confirm that potential class members received notice and to send a reminder notice to every potential class member who has not opted into this lawsuit. The Court finds both requests to be slightly overbroad. It is reasonable to infer that current Bulldog employees will keep their employer apprised of their current mailing address. Consequently, the Court approves contact by telephone to confirm receipt only when a putative class member is a former employee, particularly in view of the sending of the notice by e-mail and its posting at Bulldog's premises. The Court's ruling accords with decisions recognizing the need for reminder notices and telephonic contact when there is reason to believe that notice has not reached a potential opt-in plaintiff. *See, e.g., Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 523 (N.D. Tex. 2014) (approving reminder notice because employer did not "establish that all potential similarly-situated employees are already aware of the notice provided by the union representatives, so there may be employees who wish to opt-in who have not yet been notified by any means" but expressing concern that a 60- or 90-day notice period may not justify a reminder based on its length alone); *Santinac v. Worldwide Labor Support of Ill., Inc.*, No. 1:15CV25-LG-RHW, — F. Supp. 3d —, 2015 WL 3486971, at *6 (S.D. Miss. 2015) (requiring showing of compelling reason

to authorize reminder notices); *Case v. Danos & Curole Marine Contractors, L.L.C.*, Nos. 14-2775, 14-2976, 2015 WL 1978653, at *7 (E.D. La. May 4, 2015) (relying on *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 378 (N.D. W. Va. 2012), to deny request for reminder notices during 90-day opt-in period).

### B. Format of List of Putative Class Members

Bulldog also objects, without citing authority, to producing a list of potential opt-in class members an electronic format "because . . . it should not be required to do so in a particular format." Def.'s Resp. Mot. Certify 15. On the contrary, Federal Rule of Civil Procedure 34(a)(1)(A) allows a party to seek production of "any designated documents or electronically stored information . . . ." The party seeking production "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C) (2014). A responding party can object to the form in which electronic discovery is requested; if it does, the objecting "party must state the form or forms it intends to use." Fed. R. civ. P. 34(b)(2)(D) (2014); *see also id.* R. 34(b)(2)(E)(ii) ("If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."). Because Rule 34 allows Plaintiffs to specify a form for electronically stored information, the Court overrules Bulldog's objection to Plaintiffs' specification of an electronic format for production of a list of potential opt-in class members. *See Auto Club Family Ins. Co. v. Ahner*, No. 05-5723, 2007 WL 2480322, at *4 (E.D. La. Aug. 29, 2007) ("[I]t is not a valid ground for objection that relevant, non-privileged, electronic data can be produced in paper form, when the requesting party has specified production in an electronic format." (citing *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D. N.Y. 2002)) (other citations omitted)).

### C. Limiting Employer's Communications During Opt-in Period

Plaintiffs also ask the Court to forbid Bulldog to communicate with potential opt-in plaintiffs about this lawsuit during the opt-in period. Mot. Certify 19. The

Supreme Court held in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981), that, in a class action to which Rule 23 applied, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Balancing those interests "ensure[s] that the court is furthering, rather than hindering, the policies embodied in the Federal Rules . . . [and] should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id*. at 102. Courts have applied the *Gulf Oil* balancing test to a party's request to restrict communications with members of a putative collective action in FLSA cases. *See, e.g., Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) (collecting cases and holding that, "[a]s commercial speech, ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for First Amendment Concerns"); *Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *3 (W.D. Tex. Apr. 16, 2015) (citations omitted) (adopting *Gulf Oil* standard when deciding request to prohibit employer from communicating with members of putative opt-in class); *McKnight v. D. Houston, Inc.*, No. H-09-3345, 2010 WL 5101957, at *2 (S.D. Tex. Dec. 8, 2010) (applying *Gulf Oil* standard to limit named plaintiff's communications with potential opt-in plaintiffs); Vogt v. Tex. Instruments Inc., No. 3:05-CV-2244-L, 2006 WL 4660133, at *2–*3 (N.D. Tex. Aug. 6, 2006) (applying same standard to motion for preliminary injunction seeking to restrict communications by plaintiff's counsel before certification decision). Communications that are "misleading, coercive, or an improper attempt to undermine [the collective or class action process] by encouraging class members not to join the suit" have been restricted by courts under *Gulf Oil*. *Belt*, 299 F. Supp. 2d at 667 (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985)) (other citations omitted)). An applicant for an order restricting communications in a putative FLSA collective action must show two things: "(1) that a particular form of communication has

occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper functioning of the litigation." *Garcia*, 2015 WL 1737932, at *3 (quoting *Bass v. Pjcomm Acquisition Corp.*, No. 09–CV–01614–REB–MEH, 2011 WL 902022, at *3 (D. Colo. Mar. 14, 2011)) (other citations omitted).

As sole support for their request to limit Bulldog's communications, Plaintiffs cite a one-page order imposing a like restriction entered by Judge Bennett of this Court. *See* Order 1, *Benzon v. Nat'l Oilwell Varco, LLP*, No. 4:14-CV-2582 (S.D. Tex. June 18, 2015), available in the instant case at Dkt. No. 10 Ex. J. Judge Bennett's order, however, states —and the case's docket sheet confirms—that he entered it after holding a hearing on June 18, 2015, at which he heard argument on the motion. *Id.* at 1. Plaintiffs here make no representation about what evidence Judge Bennett heard at the motion hearing, and nothing in the record, therefore, refutes the inference that Judge Bennett conducted the balancing required by *Gulf Oil* based on argument and representations made at that hearing.

Unlike the record of the motion hearing in *Benzon*, Plaintiffs in this case do not make a showing sufficient to warrant restricting Bulldog's communications with potential class members. In his declaration, Jaso states that other Thread Representatives would be willing to join this law suit if Bulldog does not retaliate against them or intimidate them, but he does not set forth any specific facts tending to show that Bulldog will retaliate against or intimidate putative class members. *See* Jaso Decl. ¶ 11. Thus, the evidence on which Plaintiffs rely amounts to no more than speculation. *See id*. Because the Court must make specific findings based on a clear record that a particular form of communication has occurred or is threatened to occur, speculation does not, without more, entitle an FLSA plaintiff to a protective order restricting an employer's communications with members of the potential opt-in class. *Garcia*, 2015 WL 1737932, at *4 ("Plaintiffs' speculation, which is general in nature and not tied in any manner to this particular case or this particular defendant, is insufficient to allow the Court to make the specific findings

required to support a limitation on communication."); *see also Gulf Oil*, 452 U.S. at 104 ("[T]he mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules."); *McKnight*, 2010 WL 5101957, at *2 (denying motion for protective order where movant produced "no evidence that the plaintiffs plan to engage in improper communications going forward"). Consequently, Plaintiffs' request to restrict Bulldog's communications with members of the putative class must be denied on this record. Nevertheless, Plaintiffs' request provides the parties with notice of the potential perils of inappropriate communications, especially during the opt-in. *See, e.g., Belt*, 299 F. Supp. 2d at 667–69 (finding communications during opt-in period to be misleading and coercive and imposing sanctions); *McKnight*, 2010 WL 5101957, at *1 ("The need for limitations on counsel contact with potential class members is strongest during the opt-in period, when potential plaintiffs must decide whether to join the litigation." (citing *Gordon v. Kaleida Health*, 737 F. Supp. 2d 91, 100 (W.D. N.Y. 2010))).

### D. Contents of Notice

Finally, Bulldog objects generally to the form of Plaintiffs' proposed notice and counters with its own proposed notice. *See* Def.'s Resp. Mot. Certify 15. After reviewing them, the Court finds the two proposed notices to be nearly identical in substance. Bulldog raises only one specific concern about the form of Plaintiffs' proposed notice—an objection that the notice does not adequately describe the parties' claims and defenses.[3] *Cf. Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 826 (N.D. Tex. 2007) (considering "several specific objections to the proposed notice" to potential opt-in class members). The Court finds that the first paragraph of Bulldog's proposed notice gives the putative class member slightly more information than Plaintiffs' about the parties' claims and defenses without running the risk of

---

[3] The Court rejects Bulldog's proposal to move a sentence from the notice's "How to Opt In" section to the end of the first paragraph.

misleading potential class members. *Compare* Dkt. No. 10 Ex. B at 1 *with* Dkt. No. 11 Ex. A at 1. As such, the Court approves Plaintiffs' proposed notice modified by substituting Bulldog's version of the first paragraph's description of claims and defenses. *See Tolentino*, 716 F. Supp. 2d at 655 (citation omitted) ("allow[ing] the notice to contain a brief explanation of Defendant's bases for disputing liability").

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for conditional certification, Dkt. No. 10. The Court conditionally certifies a class defined as Plaintiffs propose. Pursuant to Federal Rule of Civil Procedure 16, the Court **ORDERS** that:

1. Plaintiffs' proposed notice and opt-in form, Dkt. No. 10 Ex. B, are approved as modified in Part III of this memorandum and order.
2. Within 14 days after the entry of this order, Bulldog must produce a list of all Thread Representatives it employed on or after June 16, 2012. The list must be produced in an electronic form satisfying Federal Rule of Civil Procedure 34, and it must include, when available, each employee's name, mailing address, e-mail address, telephone number, and current employment status.
3. Notices are to be sent by regular and electronic mail within 7 days after Plaintiffs receive the list produced in compliance with the previous paragraph. Within 7 days after producing the list required by the previous paragraph, Bulldog must post an English- and Spanish-language copy of the notice in a conspicuous place at each site where Thread Representatives work. The notices must remain posted until the opt-in period ends.
4. The opt-in period runs for sixty days from the date on which notices are sent.
5. Plaintiffs may not send reminder notices.
6. Thirty days after the opt-in period begins, Plaintiffs may contact potential opt-in plaintiffs who are former Bulldog employees by telephone to confirm receipt of the notices. The parties must confer within 14 days after the entry

of this order and file a proposed script for the telephone calls authorized by this paragraph.

SIGNED this 15th day of October, 2015.

_____
Hilda Tagle
Senior United States District Judge